UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY HERNANDEZ, JR., Booking No. 19766772,<br><br>                                    Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO CHILD PROTECTIVE SERVICES; CARLY RAY, Social Worker; JESSICA VALDIVIA, Social Worker; DOES 1-10, Employees of San Diego County,<br><br>                                    Defendants. | Case No.: 3:20-cv-00011-AJB-BGS<br><br>**ORDER**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2)**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

      Mark Anthony Hernandez, Jr. ("Plaintiff"), incarcerated at the George Bailey Detention Facility in San Diego, California, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. Section 1983. (*See* ECF No. 1, Compl.) Plaintiff claims that employees of San Diego County Child Protective Services ("CPS") violated his civil rights by recording him without his knowledge, defaming him, and filing false charges on which Plaintiff was arrested, prosecuted, and convicted. (*See id.* at 3-6.)

      Plaintiff did not prepay the $400 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing, and instead filed a Motion to Proceed In Forma Pauperis

("IFP") pursuant to 28 U.S.C. Section 1915(a). (*See* ECF No. 2.)

**I.     Motion to Proceed In Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1)-(2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Oct. 1, 2019)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. Section 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Plaintiff's trust account activity, as well as the attached prison certificate verifying his available balances. (*See* ECF No. 2, at 4-7.) These documents show that although he carried an average monthly balance of $33.00 and had $33.00 in average monthly deposits to his trust account for the six months preceding the filing of this action, Plaintiff had an available balance of just $0.29 at the time of filing. (*See id.* at 4-6.)

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2), but declines to impose the initial $0.03 partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. Section 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Watch Commander of George Bailey Detention Facility, or his designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. Section 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

**II.  Sua Sponte Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

A.  Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b). Under

these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Plaintiff's Factual Allegations

Plaintiff alleges that two CPS social workers, Defendants Ray and Valdivia, visited

4

him at home on April 10, 2018 in response to an undescribed incident that occurred the day before. (Compl. at 3.) Defendant Ray allegedly placed her cell phone on the table while the two social workers spoke to Plaintiff, who "felt comfortable and opened up . . . ." (*Id.*) Subsequently, Plaintiff discovered that Defendant Ray recorded their conversation without his knowledge or consent, and that recording was later used against him in criminal proceedings. (*See id.*)

The next day, April 11, Defendant Ray called Plaintiff's former parole officer and asked whether Plaintiff was still on parole from a prior conviction. (*See id.* at 4.) Although Plaintiff's former parole officer correctly told Defendant Ray that Plaintiff had been discharged from parole, Defendant Ray nonetheless called the hospital where Plaintiff's daughter was being treated, and told two nurses that Plaintiff's parole conditions did not allow him on the hospital grounds or near his daughter or other minors. (*See id.*) As a result, Plaintiff states that he was not allowed to see his daughter in the hospital. (*See id.*) Plaintiff alleges that he corrected Defendant Ray, explaining that he was not on parole. (*Id.* at 4-5.) In response to that correction, Plaintiff alleges that Defendant Ray filed unspecified "false charges" on which he was arrested and convicted. (*Id.* at 6.)

Plaintiff alleges that Defendants Ray and Valdivia violated due process by surreptitiously recording their conversation and using it against him in criminal proceedings. (*See id.* at 3.) Additionally, Plaintiff contends that Defendant Ray defamed his character by falsely stating that he was a parolee and was not permitted to see his daughter in the hospital, and filed false charges against him, which led to "false arrest/loss of liberty and other civil rights." (*See id.* at 4-6.)

C. <u>42 U.S.C. Section 1983</u>

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030,

1035-36 (9th Cir. 2015).

### a. Audio Recording and False Arrest Claims

As mentioned, Plaintiff claims that his civil rights were violated when, on April 10, 2018, Defendants Ray and Valdivia visited his home due to an undescribed incident that occurred the day before. (*See* Compl. at 3.) During that visit Defendant Ray surreptitiously recorded their conversation without Plaintiff's knowledge or consent, and "later . . . used [the recording] against [Plaintiff] in criminal court . . . ." (*Id.*) Plaintiff alleges that those criminal proceedings were based on "false charges" on which he was "wrongfully convicted . . . ." (*Id.* at 6.)

There are two methods for state prisoners to raise complaints related to their imprisonment in federal court. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Federal law opens two main avenues to relief on complaints related to imprisonment . . . ." (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973))). In general, claims of constitutional violations related to the "circumstances" of a prisoner's confinement must be brought in a civil rights action under Section 1983, *see id.*, while constitutional challenges to the validity or duration of a prisoner's confinement which seek either "immediate release from prison" or the "shortening of [a state prison] term" must be raised in a petition for federal habeas corpus under 28 U.S.C. Section 2254, or through appropriate state relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78-79 (2005) (citations and internal quotation marks omitted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("The Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." (citing *Dotson*, 544 U.S. at 81-82)).

Thus, to the extent Plaintiff seeks damages based on claims that he was unlawfully convicted, sentenced, and/or incarcerated, he may not pursue those claims in a civil rights action pursuant to 42 U.S.C. Section 1983, without first showing his conviction (or convictions) has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck,* the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486-87; *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1054-55 (9th Cir. 2016).

"Suits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody*.'" *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (emphasis added) (quoting *Preiser*, 411 U.S. at 498-99 (holding that a writ of habeas corpus is "explicitly and historically designed" to provide a state prisoner with the "exclusive" means to "attack the validity of his confinement" in federal court)).

Although Plaintiff labels his recording claim as one for violation of his "Due Process Rights and other civil rights," Compl. at 3, it is more appropriately analyzed under the rubric of the Fourth Amendment, which prohibits "unreasonable searches and seizures." *See* U.S. Const. Amend. IV. "While 'the Supreme Court left open the question whether *Heck*'s bar applies to Fourth Amendment violations,' the Ninth Circuit has since 'answered that question in the affirmative.'" *Finley v. Fisher*, No. 14-cv-00913-HSG, 2015 WL 3466394, at *3 (N.D. Cal. June 1, 2015) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 583 (9th Cir. 2007)). As the Ninth Circuit has held, Section 1983 claims alleging "illegal search and seizure of evidence upon which criminal charges are based" are barred by *Heck*. *See Whitaker*, 486 F.3d at 584 ("[Plaintiffs] claim that Defendants committed judicial

deception to obtain the wiretap warrants and then impermissibly hid the existence of, and evidence produced by, those wiretaps—evidence that triggered the police investigations and state prosecutions against them. In other words, they challenge the search and seizure of the evidence upon which their criminal charges and convictions were based. *Heck* and *Harvey* bar such a collateral attack through the vehicle of a civil suit." (citing *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000), *overruled in part on other grounds by Wallace v. Kato*, 549 U.S. 384, 393-94 (2007))); *Branson v. City of Los Angeles*, No. CV 11-00565 MMM (JEMx), 2011 WL 13220154, at *7 (C.D. Cal. Apr. 21, 2011) ("Under the holding in *Harvey*, which the Ninth Circuit has reaffirmed numerous times, a plaintiff cannot challenge an asserted Fourth Amendment violation that produced evidence of his guilt until such time as his conviction has been vacated or overturned.").

Similarly, *Heck* "generally bars a claim for false arrest under § 1983 if success in the false arrest suit would be inconsistent with the underlying conviction." *Hart v. Parks*, 450 F.3d 1059, 1065 n.5 (9th Cir. 2006). Plaintiff alleges that Defendant Ray filed false criminal charges against him in reliance on the illegally obtained recording. (*See* Compl. at 3-6.) In substance, Plaintiff is arguing that there was no probable cause to arrest and prosecute him. A finding in Plaintiff's favor would thus implicate *Heck* because it would "necessarily imply the invalidity of [Plaintiff's] conviction." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1988); *see also Heck*, 512 U.S. at 487; *Smith v. Ball*, 278 F. App'x 739, 741 (9th Cir. 2008) (holding that retaliation claim was barred by *Heck* "because prevailing on [plaintiff's] claim would imply the invalidity of her criminal convictions arising from the same events."); *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) ("Wrongful arrest, malicious prosecution, and a conspiracy among Los Angeles officials to bring false charges against [Plaintiff] could not have occurred unless he were innocent of the crimes for which he was convicted").

There is one potential exception to this rule, however. In *Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001), the Ninth Circuit addressed a challenge by two plaintiffs to the qualifications of nurses who contracted with the municipal defendants to handle blood tests

for individuals suspected of driving under the influence. *See id.* at 820. Although the plaintiffs pleaded guilty to and were convicted of the charges against them, the Ninth Circuit held that their subsequent Section 1983 claims were not barred by *Heck* because their lawsuit concerned "the way in which their blood was drawn," and would not necessarily imply the invalidity of their convictions since "[t]*heir convictions derive from their pleas, not from verdicts obtained with supposedly illegal evidence*." *Id.* at 820-23 (emphasis in original).

As currently alleged, the Court finds that Plaintiff's audio recording and false arrest claims are barred by *Heck*. Plaintiff asserts that the evidence Defendant Ray gathered during their conversation was obtained in violation of his constitutional rights and allegedly "used in criminal court" to support false criminal charges on which he was ultimately convicted. (*See* Compl. at 3, 6.) He alleges that this conviction was wrongful and seeks damages for "false arrest/loss of liberty and other civil rights," arguing that the charges were filed because he "inform[ed] C.P.S. social worker Carly Ray of her wrong accusations." (*See id.* at 6.) Therefore, like the claims at issue in *Whitaker* and *Harvey*, finding in Plaintiff's favor on his audio recording and false arrest claims would necessarily imply that his arrest, prosecution, and conviction were invalid. *See Whitaker*, 486 F.3d at 584 (holding that *Heck* and *Harvey* bar civil suits attacking the search and seizure of evidence upon which criminal charges and conviction are based); *see also Agner v. City of Hermosa Beach*, 315 F. App'x 29, 30 (9th Cir. 2008) (false arrest claims barred by *Heck* because the same evidence supported the arrest and conviction).

Because Plaintiff does not claim to have already invalidated his conviction, *Heck*, 512 U.S. at 487, or otherwise state a claim based on the audio recording or alleged false arrest that is not barred by *Heck*, his audio recording and false arrest claims must be dismissed sua sponte and in their entirety for failing to state a claim upon which Section 1983 relief can be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B) and Section 1915A(b).

///

b. Defamation

Plaintiff further alleges that Defendant Ray defamed him and violated "other civil rights," by incorrectly informing two nurses at the hospital where Plaintiff's daughter was being treated that Plaintiff was on active parole and "not allowed on the hospital grounds or anywhere around [his] daughter or any minors due to [his] parole conditions." (Compl. at 4.)

Defamation is generally not actionable under Section 1983. *See Paul v. Davis*, 424 U.S. 693, 699-701 (1976) (holding that a person's interest in a good name and not being branded as a criminal does not give rise to a claim under the Due Process Clause of the Fourteenth Amendment); *Whatley v. Gray*, No. 3:17-cv-01591-DMS-NLS, 2018 WL 828200, at *2 (S.D. Cal. Feb. 8, 2018) ("[C]laims of 'defamation of character' . . . , libel or slander do not rise to the level of a federal constitutional violation." (internal citation omitted)). This is because Plaintiff's interest in his good reputation alone is not a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. *See Paul*, 424 U.S. at 701. When a defamatory statement allegedly injures "some more tangible interests," however, it may be actionable under Section 1983. *See id.* This is called the "stigma-plus" test, and the "plus" element requires "that the complaint allege that the state action not only caused the stigma of a damaged reputation, but also that the state action deprived the plaintiff of a protected liberty or property interest or a status recognized by the state." *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999); *see also Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1184-88 (9th Cir. 2009) (discussing *Paul* and the stigma-plus test), *rev'd on other grounds*, 562 U.S. 29 (2010); *Gillette v. Malheur Cnty.*, No. 2:14-CV-01542-SU, 2016 WL 3180228, at *5 (D. Or. May 3, 2016) ("Plaintiff cannot establish a constitutional deprivation by showing that alleged government defamation encouraged or prompted a third-party to injure plaintiffs. At most, such allegations may state a claim for defamation under state law and not the U.S. Constitution . . . ." (citing *WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996), *dismissed on other grounds on rh'g*, 104 F.3d 1133 (9th Cir. 1997) (en banc))

(internal citation omitted)).

Plaintiff alleges that as a result of Defendant Ray's statements to two nurses at the hospital where his daughter was being treated, Plaintiff "wasn't allowed to see [his] daughter . . . when she needed [him] most." (Compl. at 4.) Although the Court is unaware of any case directly holding that a parent has a constitutionally protected liberty interest in visiting their child in the hospital, "there is no question that parents have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children." *Miller v. California*, 355 F.3d 1172, 1175 (9th Cir. 2004) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Assuming that Plaintiff did have such a liberty interest, Plaintiff nevertheless fails to state an actionable claim for defamation. The Complaint alleges that two nurses at the hospital,[2] not Defendant Ray or any other individual acting under color of state law, caused his alleged injury when they prevented him from visiting his daughter. (*See* Compl. at 4-5.) Thus, like other cases alleging that defamation by a government actor caused a third party to harm Plaintiff's rights, Plaintiff's defamation claim must be dismissed. *See, e.g.*, *Paul*, 424 U.S. at 695-97 (rejecting defamation allegations based on lost employment opportunities due to police flyer incorrectly identifying plaintiff as an "active shoplifter"); *Gillette*, 2016 WL

---

[2] Count 2 of Plaintiff's Complaint refers to these two nurses as "Jane Does 1-2." (*See* Compl. at 4.) Earlier in his Complaint, while identifying the Defendants, Plaintiff refers to "Does 1-10" as "employee's [sic] of San Diego County related to this matter." (*See id.* at 2.) The Complaint does not offer any additional detail about these Doe Defendants, nor does Plaintiff make clear whether he intends to sue Jane Does 1-2, what claims (if any) he alleges against them, what hospital they work at, or whether, as the Complaint may be suggesting, they are employees of San Diego County. Even if Plaintiff wishes to sue Jane Does 1 and 2, Plaintiff offers no details about the remaining Doe Defendants. Although "'[a] plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, . . . he must allege specific facts showing how each particular doe defendant violated his rights.'" *See Amezquita v. Hough*, No. 3:19-cv-01461-AJB-KSC, 2019 WL 4674287, at *3 n.2 (S.D. Cal. Sept. 25, 2019) (quoting *Cuda v. Employees/Contractors/Agents at or OCCC*, Civ. No. 19-00084 DKW-KJM, 2019 WL 2062945, at *3-4 (D. Haw. May 9, 2019)). To the extent Plaintiff is alleging claims against Jane Does 1 and 2, they are dismissed for failure to state a claim because Plaintiff has not alleged that they acted "under color of state law," in allegedly violating his rights. *See West*, 487 U.S. at 48.

3180228, at *6 (alleging that sheriff's department official's false statements caused bank to repossess plaintiff's assets was insufficient to state Section 1983 defamation claim); *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1197 (D. Nev. 2009) (blacklisting from employment by private businesses based on government actors' alleged defamatory statements not actionable under Section 1983).

For these reasons, the Court finds Plaintiff's Complaint fails to adequately allege a defamation claim under Section 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### c. Claims Against County of San Diego Child Protective Services

Although Plaintiff names CPS as a Defendant in the caption of his Complaint, CPS is not listed as one of the Defendants. (*Compare* Compl. at 1, *with id.* at 2.) Moreover, none of the counts of Plaintiff's Complaint assert claims directly against CPS, focusing instead on Defendants Ray and Valdivia. (*See id.* at 3-6.) Nonetheless, and to the extent Plaintiff seeks to hold CPS liable for the alleged wrongs in the Complaint, such claims must be dismissed.

CPS is allegedly an arm of San Diego County, and accordingly could potentially be held liable under Section 1983 pursuant to the Supreme Court's decision in *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978). To state a claim under *Monell*, Plaintiff must allege that he was injured pursuant to an official policy or a discriminatory practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691. Plaintiff has not alleged the existence of any official policy or "permanent and well settled" practice by CPS that caused his alleged injuries. *See id.* As a result, Plaintiff's claims against CPS are dismissed sua sponte for failure to state a plausible claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1); *see also Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (affirming grant of summary judgment on claims that county could be liable for warrantless removal of minor child from the home where there was no evidence of a policy or practice under *Monell*).

d. <u>Leave to Amend</u>

For all these reasons, the Court finds that Plaintiff's Complaint fails to state a claim upon which Section 1983 relief can be granted, and dismisses it sua sponte in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004. Having now provided Plaintiff with "notice of the deficiencies in his complaint," however, the Court will also grant Plaintiff an opportunity to fix them, if he can. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

**III. Conclusion and Orders**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. Section 1915(a) (ECF No. 2).

2. **DIRECTS** the Watch Commander of George Bailey Detention Facility, or his designee, to collect from Plaintiff's inmate trust account the $350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Watch Commander, George Bailey Detention Facility, 446 Alta Road, San Diego, California, 92158.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B) and Section 1915A(b), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint

will be considered waived. See S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B) and Section 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. See *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: February 26, 2020

Hon. Anthony J. Battaglia
United States District Judge

14

3:20-cv-00011-AJB-BGS